**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM BRYAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>　　　　PLAINTIFF,<br><br>　　　　vs.<br><br>BANCO BRADESCO S.A., LUIZ CARLOS TRABUCO CAPPI, ALEXANDRE DA SILVA GLÜHER, and JULIO DE SIQUEIRA CARVALHO DE ARAUJO,<br><br>　　　　DEFENDANTS. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William Bryan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Banco Bradesco S.A. ("Banco Bradesco" or the

"Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Banco Bradesco American Depositary Shares ("ADSs") trading under tickers BBD and BBDO between April 30, 2012 and May 31, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.       The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.       This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.       Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District. Additionally, Defendant Banco Bradesco conducts business within this District.

5.       In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff, as set forth in the accompanying Certification, purchased Banco Bradesco ADSs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Defendant Banco Bradesco provides banking and financial products and services to individuals, companies, and corporations and institutions. The Company is incorporated in the Federative Republic of Brazil with principal executive offices located at Cidade de Deus S/N – Vila Yara – 06029-900 – Osasco – SP, Brazil. The Company also maintains an office at 450 Park Avenue, 32nd Floor, New York, NY. Banco Bradesco's ADSs are traded on the NYSE under the ticker symbol "BBD" and "BBDO."

8.      Defendant Luiz Carlos Trabuco Cappi ("Cappi") has been the Chief Executive Officer ("CEO") of the Company since March 10, 2009 and the Vice-Chairman of the Company during the Class Period.

9.      Defendant Alexandre da Silva Glüher ("Glüher") was the Chief Financial Officer ("CFO") of the Company during the Class Period and has been the Vice-President of the Company since January 2014.

10.      Defendant Julio de Siqueira Carvalho de Araujo ("Araujo") was the CFO of the Company during the Class Period and the Vice-President of the Company during the Class Period.

11.      Defendants Cappi, Glüher, and Araujo are sometimes referred to herein as the "Individual Defendants."

12.      Each of the Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      was directly involved in the day-to-day operations of the Company at the highest levels;

(c)      was privy to confidential proprietary information concerning the Company and its business and operations;

(d)      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)      approved or ratified these statements in violation of the federal securities laws.

13.      Banco Bradesco is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.      The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Banco Bradesco under *respondeat superior* and agency principles.

15.      Defendant Banco Bradesco and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

16.    On March 26, 2015, the Brazilian Federal Police announced that since 2013 they have been conducting an ongoing criminal investigation, called "Operation Zelotes", of suspected corruption at Brazil's Administrative Council of Tax Appeals ("CARF"), an agency within Brazil's Finance Ministry. Further, the Brazilian Federal Police announced that Operation Zelotes had uncovered a multibillion-dollar tax fraud scheme at the Ministry of Finance, which found that as many as 70 companies had bribed members of the CARF to obtain favorable rulings that nullified, mitigated, reduced, or waived the taxes that the companies owed.

17.    Operation Zelotes focuses on CARF cases since 2005 in which it is suspected that CARF rulings inappropriately reduced or nullified tax fines and assessments imposed on certain companies.

18.    Brazil's Internal Revenue Service and the Internal Affairs of the Ministry of Finance and the Federal Public Ministry are also participating in the investigation.

## Materially False and Misleading Statements

19.    On April 30, 2012, the Company filed a Form 20-F for the fiscal year ended December 31, 2011 (the "2011 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2011. The 2011 20-F was signed by Defendants Cappi and Araujo. The 2011 20-F also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Cappi and Araujo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20.    The 2011 20-F stated that the Company is a party to tax administrative proceedings, stating in part:

**Legal proceedings**

We are party in civil, tax and labor administrative proceedings and lawsuits that have arisen during the normal course of our business. We do not have any litigation matters that are significant on an individual basis. We believe that there are no suits pending or threatened, individually or in the aggregate, that if decided against us or our subsidiaries would have a material adverse effect on our business, financial condition, properties, prospects or results of operations.

As of December 31, 2011, of our provision of R$17,926 million, 12.9% related to labor matters, 18.6% related to civil liability cases and 68.5% related to tax issues. For additional information, see Note 38 to our consolidated financial statements in "Item 18. Financial Statements."

The probable losses recognized in our consolidated financial statements refer to litigation related to (i) inflation adjustments and (ii) legality of certain taxes and contributions. The remaining litigation, where the probability of loss is considered as possible based on our judgment using available information, are related to tax assessments, in the amount of R$891 million as of December 31, 2011 (R$614 million in 2010). We believe these assessments are inconsistent with current law and are therefore not recognized in our consolidated financial statements.
We believe that as of December 31, 2011, we have provisioned sufficient funds to cover our probable losses from litigation, subject to the inflation-indexation requirement for provisions relating to certain tax matters.

*       *       *

Tax-related matters. We are also the subject of a number of general indemnity and taxation related actions, including disputes relating to the constitutional validity of certain tax requirements, for which provisions have been recorded in full.

*       *       *

**b)      Contingent liabilities and tax and social security obligations**

The Organization is a party in judicial proceedings of a labor, civil and tax related nature in the normal course of its activities.

Provisions were made on the basis of opinions from legal advisors, the nature of legal actions, their similarity with previous cases, their complexity, and the courts' previous positions, whenever losing a case was rated as "probable".

The Organization's Management understands that the accrued provision is sufficient to cover any losses arising from the related proceedings.

*       *       *

**c)**     **Tax and social security obligations**

The Organization is disputing in court the legality and constitutionality of certain taxes and contributions, which mainly relate to:

- Cofins – R$ 6,345,973 thousand: a request for authorization to calculate and pay Cofins, from October 2005, based on effective income, whose concept is in Article 2 of Supplementary Law 70/91, removing the unconstitutional increase in the calculation basis introduced by paragraph 1 of Article 3 of Law 9,718/98;

- INSS Autonomous Brokers – R$ 1,004,092 thousand: we are questioning the incidence of social security contribution on remunerations paid to autonomous service providers, established by Supplementary Law 84/96 and subsequent regulations/amendments, at the rate of 20% and additional of 2.5%, under the argument that services are not provided to insurance companies, but to policyholders, thus being outside the incidence of the contribution provided for in item I, Article 22, of Law 8,212/91, with new wording given in Law 9,876/99;

- IRPJ/Loan Losses – R$ 703,568 thousand: we are requesting authorization to deduct, for purposes of determination of the calculation basis of IRPJ and CSLL, the total or partial amount of effective and definite loan losses, regardless of the compliance with the conditions and terms provided for in Articles 9 to 14 of Law 9,430/96 that only apply to temporary losses;

- CSLL – Deductibility on the IRPJ calculation basis – R$ 607,405 thousand: we are requesting to calculate and pay income tax due, related to the 1997 base year and subsequent years, without adding the CSLL to the respective calculation basis, set forth by Article 1, of Law 9,316/96, since this contribution represents an effective, necessary and mandatory expense to the Company; and

- PIS – R$ 293,267 thousand: we are requesting the authorization to offset amounts overpaid in 1994 and 1995 base years as contribution to PIS, corresponding to the amount that exceeds the calculation basis established in the Constitution, i.e., gross operating income, as defined in the income tax legislation – concept in Article 44 of Law 4,506/64, not including interest income.

21.     On April 30, 2013, the Company filed a Form 20-F for the fiscal year ended December 31, 2012 (the "2012 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2012. The 2012 20-F was signed by Defendants Cappi and Araujo. The 2012 20-F also contained signed SOX

certifications by Defendants Cappi and Araujo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22.     The 2012 20-F stated that the Company is a party to tax administrative proceedings, stating in part:

*Legal proceedings*

We are a party to  civil, tax and labor administrative proceedings and lawsuits that have arisen during the normal course of our business. We do not have any litigation matters that are significant on an individual basis. We believe that there are no suits pending or threatened, individually or in the aggregate, that if decided against us would have  a  material  adverse  effect  on  our  business,  financial  condition, properties, prospects or results of operations.

As of December 31, 2012, of our provision of R$21,047 million, 18.8% related to labor matters, 17.7% related to civil liability cases and 70.5% related to tax issues. For additional information, see Note 38 to our consolidated financial statements in "Item 18. Financial Statements."

The probable losses recognized in our consolidated financial statements refer to litigation related to (i) inflation adjustments and (ii) legality of certain taxes and contributions. The remaining litigation, where the probability of loss is considered as possible based on our judgment using available information, are related to tax assessments, in the amount of R$2,540 million as of December 31, 2012 (R$890 million in 2011). We believe these assessments are inconsistent with current law and are therefore not recognized in our consolidated financial statements.

We believe that as of December 31, 2012, we have set aside sufficient funds as provisions to cover our probable losses from litigation, subject to the inflation-indexation requirement for provisions relating to certain tax matters.

*           *           *

**Tax-related matters** – We are also a party to a number of judicial lawsuits and administrative proceedings, mainly involving issues related to constitutionality and fair interpretation of some tax requirements. Some claims aim at the non-payment of taxes with which we do not agree, while others aim at recovering taxes we understand have already been paid or unduly paid. The amounts we have not paid in view of these claims have in general been provisioned and are restated based on criteria established by tax legislation. On the other hand, those taxes to be refunded are only recorded upon final and unappealable judgment recognizing our right. See

Note 17 to our consolidated financial statements for a description of our most relevant tax claims.

* * *

**b)**     **Contingent liabilities and tax and social security obligations**

The Organization is a party in judicial proceedings of a labor, civil and tax related nature in the normal course of its activities.

Provisions were made on the basis of opinions from legal advisors, the nature of legal actions, their similarity with previous cases, their complexity, and the courts' previous positions, whenever losing a case was rated as "probable".

The Management understands that the accrued provision is sufficient to cover any losses arising from the related proceedings.

Liability related to litigation is held until the conclusion to the lawsuit, represented by judicial decisions, with no further appeals or due to the statute of limitation.

* * *

**c)**     **Tax and social security obligations**

The Organization is disputing in court the legality and constitutionality of certain taxes and contributions, which mainly relate to:

- Cofins – R$ 7,863,875 thousand (2011 – R$ 6,345,973 thousand): a request for authorization to calculate and pay Cofins, from October 2005, based on effective income, whose concept is in Article 2 of Supplementary Law 70/91, removing the unconstitutional increase in the calculation basis introduced by paragraph 1 of Article 3 of Law 9,718/98;

- INSS Autonomous Brokers – R$ 1,140,796 thousand (2011 – R$ 1,004,092 thousand): we are questioning the incidence of social security contribution on remunerations paid to autonomous service providers, established by Supplementary Law 84/96 and subsequent regulations/amendments, at the rate of 20% and additional of 2.5%, under the argument that services are not provided to insurance companies, but to policyholders, thus being outside the incidence of the contribution provided for in item I, Article 22, of Law 8,212/91, with new wording given in Law 9,876/99;

- IRPJ/Loan Losses – R$ 797,811 thousand (2011 – R$ 703,568 thousand): we are requesting authorization to deduct, for purposes of determination of the calculation basis of IRPJ and CSLL, the total or partial amount of effective and definite loan

losses, regardless of the compliance with the conditions and terms provided for in Articles 9 to 14 of Law 9,430/96 that only apply to temporary losses;

- CSLL – Deductibility on the IRPJ calculation basis – R$ 684,739 thousand (2011 – R$ 607,405 thousand) : we are requesting to calculate and pay income tax due, related to the 1997 base year and subsequent years, without adding the CSLL to the respective calculation basis, set forth by Article 1, of Law 9,316/96, since this contribution represents an effective, necessary and mandatory expense to the Company; and

- PIS – R$ 302,089 thousand (2011 – R$ 293,267 thousand): we are requesting the authorization to offset amounts overpaid in 1994 and 1995 base years as contribution to PIS, corresponding to the amount that exceeds the calculation basis established in the Constitution, i.e., gross operating income, as defined in the income tax legislation – concept in Article 44 of Law 4,506/64, not including interest income.

23.     On April 30, 2014, the Company filed a Form 20-F for the fiscal year ended December 31, 2013 (the "2013 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2013. The 2013 20-F was signed by Defendants Cappi and Araujo. The 2013 20-F also contained signed SOX certifications by Defendants Cappi and Araujo attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

24.     The 2013 20-F stated that the Company is a party to tax administrative proceedings, stating in part:

*Legal proceedings*

We are a party to civil, tax and labor administrative proceedings and lawsuits that have arisen during the normal course of our business. We do not have any litigation matters that are significant on an individual basis. We believe that there are no suits pending or threatened, individually or in the aggregate, that if decided against us would have a material adverse effect on our business, financial condition, properties, prospects or results of operations.

As of December 31, 2013, of our provision of R$13,753 million, 18.3% related to labor matters, 27.7% related to civil liability cases and 54.0% related to tax issues. For additional information, see Note 38 to our consolidated financial statements in "Item 18. Financial Statements."

Probable losses recognized in our consolidated financial statements refer to litigation related to: (i) inflation adjustments; and (ii) legality of certain taxes and contributions. The remaining litigation, where the probability of loss is considered as possible based on our judgment using available information, are related to tax assessments, in the amount of R$4,311 million as of December 31, 2013 (R$2,540 million in 2012). We believe these assessments are inconsistent with current law and are therefore not recognized in our consolidated financial statements.

We believe that as of December 31, 2013, we have set aside sufficient funds as provisions to cover our probable losses from litigation, subject to the inflation-indexation requirement for provisions relating to certain tax matters.

\*        \*        \*

**Tax-related matters** – We are also a party to a number of judicial lawsuits and administrative proceedings, mainly involving issues related to constitutionality and fair interpretation of some tax requirements. Some claims aim at the non-payment of taxes with which we do not agree, while others aim at recovering taxes we understand have already been paid or unduly paid. The amounts we have not paid in view of these claims have in general been provisioned in conformity with applicable accounting rules and are restated based on criteria established by tax legislation. On the other hand, those taxes to be refunded are only recorded upon final and unappealable judgment recognizing our right. See Note 17 to our consolidated financial statements for a description of our most relevant tax claims.

\*        \*        \*

b)    **Contingent liabilities and tax and social security obligations**

The Organization is party to a number of labor, civil and tax lawsuits, arising from the normal course of business.

Where the loss is deemed probable, Management recorded provisions based on their opinion and on the opinion of their legal counsel, the nature of the lawsuit, similarity to previous lawsuits, the complexity and the courts standing.

Management considers that the provision is sufficient to cover losses generated by the respective lawsuits.

Liability related to litigation is held until the conclusion to the lawsuit, represented by judicial decisions, with no further appeals or due to the statute of limitation.

*     *     *

**c)     Tax and social security obligations**

The Organization is disputing the legality and constitutionality of certain taxes and contributions in court, for which provisions have been recorded in full, although there is good chance of a favorable outcome in the medium to long term, based on the opinion of Management and their legal counsel, The processing of these legal obligations whose risk is deemed as probable is regularly monitored in the legal court. During the year, there was progress in some cases which may result in favorable conditions for the Organization, resulting in the reversal of the related provisions.

The main cases are:

- Cofins - R$2,119,067 thousand (2012 - R$9,082,801 thousand): a request for authorization to calculate and pay Cofins based on effective income, as set forth in Article 2 of Supplementary Law 70/91, removing the unconstitutional increase in the calculation for other revenues other than income;

- INSS Autonomous Brokers - R$1,313,647 thousand (2012 - R$1,140,796 thousand): we are requesting the impact of social security contribution on remunerations paid to third-party service providers, established by Supplementary Law 84/96 and subsequent regulations/amendments, at the 20.0% rate and additionally 2.5%, on the grounds that services are not provided to insurance companies but to policyholders, thus being outside the incidence of the contribution provided for in item I, Article 22 of Law 8212/91,as new wording in Law 9876/99;

- IRPJ/Loan Losses - R$1,756,396 thousand (2012 - R$1,659,332 thousand): we are requesting to deduct from income tax and social contributions payable (IRPJ and CSLL, respectively) amounts of actual and definite loan losses related to unconditional discounts granted upon receipt of claims incurred, regardless if they comply with the terms and conditions provided for in Articles 9 to 14 of Law 9430/96 that only apply to temporary losses; and

12

- PIS - R$310,127 thousand (2012 –R$302,089): we are requesting the authorization to offset overpaid amounts in 1994 and 1995 as PIS contribution, corresponding to the surplus on the calculation established in the Constitution, i.e., gross operating income, as defined in the income tax legislation - set out in Article 44 of Law 4506/64, excluding interest income.

25.     On April 30, 2015, the Company filed a Form 20-F for the fiscal year ended December 31, 2014 (the "2014 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2014. The 2014 20-F was signed by Defendants Cappi and Glüher. The 2014 20-F also contained signed SOX certifications by Defendants Cappi and Glüher attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

26.     The 2014 20-F stated that the Company is a party to tax administrative proceedings, stating in part:

### *Legal proceedings*

We are a party to civil, tax and labor administrative proceedings and lawsuits that have arisen during the normal course of our business. We do not have any litigation matters that are significant on an individual basis. We believe that there are no suits pending or threatened, individually or in the aggregate, that if decided against us would have a material adverse effect on our business, financial condition, properties, prospects or results of operations.

As of December 31, 2014, of our provision of R$13,864 million, 19.5% related to labor matters, 28.4% related to civil liability cases and 52.1% related to tax issues. For additional information, see Note 37d to our consolidated financial statements in "Item 18. Financial Statements."

Probable losses recognized in our consolidated financial statements refer to tax and social security matters related to: (i) inflation adjustments; and (ii) legality of certain taxes and contributions. The remaining litigation, where the probability of loss is considered as possible based on our judgment using available information, are related to tax assessments, in the amount of R$9,092 million as of December 31, 2014 (R$4,311 million in 2013). We believe these tax assessment noticesare

inconsistent with current law and are therefore not recognized in our consolidated financial statements.

We believe that as of December 31, 2014, we have set aside sufficient funds as provisions to cover our probable losses from litigation, subject to the inflation-indexation requirement for provisions relating to certain tax matters.

\*        \*        \*

**Tax-related matters** – We are also a party to a number of judicial lawsuits and administrative proceedings, mainly involving issues related to constitutionality and fair interpretation of some tax requirements. Some claims aim at the non-payment of taxes with which we do not agree, while others aim at recovering taxes we understand have already been paid or unduly paid. The amounts we have not paid in view of these claims have in general been provisioned in conformity with applicable accounting rules and are restated based on criteria established by tax legislation. On the other hand, those taxes to be refunded are only recorded upon final and unappealable judgment recognizing our right. See Note 17 to our consolidated financial statements for a description of our most relevant tax claims.

\*        \*        \*

**b)    Contingent liabilities and tax and social security obligations**

The Organization is a party to a number of labor, civil and tax lawsuits, arising from the normal course of business.

Management recorded provisions based on their opinion and that of their legal counsel, the nature of the lawsuit, similarity to previous lawsuits, complexity and the courts standing, where the loss is deemed probable.

Management considers that the provision is sufficient to cover losses generated by the respective lawsuits.

Liability related to litigation is held until the conclusion to the lawsuit, represented by judicial decisions, with no further appeals or due to the statute of limitation.

\*        \*        \*

**c)    Tax and social security obligations**

The Organization is disputing the legality and constitutionality of certain taxes and contributions in court, for which provisions have been recorded in full, although there is good chance of a favorable outcome, based on the opinion of Management and their legal counsel. The processing of these legal obligations and the provisions for cases for which the risk of loss is deemed as probable is regularly monitored in

the legal court. During or after the conclusion of each case, a favorable outcome may arise for the Organization, resulting in the reversal of the related provisions.

The main cases are:

- PIS and COFINS – R$ 1,818,412 thousand (2013 - R$ 2,474,009 thousand): a request for authorization to calculate and pay PIS and COFINS based on effective billing, as set forth in Article 2 of Supplementary Law n° 70/91, removing from the calculation base the unconstitutional inclusion of other revenues other than those billed;

- INSS Autonomous Brokers – R$ 1,531,540 thousand (2013 - R$ 1,313,647): discussing the charging of social security contribution on remunerations paid to third-party service providers, established by Supplementary Law n° 84/96 and subsequent regulations/amendments, at 20.0% with an additional 2.5%, on the grounds that services are not provided to insurance companies but to policyholders, thus being outside the scope of such a contribution as provided for in item I, Article 22 of Law n° 8212/91, as new wording in Law n° 9876/99;

- IRPJ/Credit Losses - R$ 2,059,542 thousand (2013 - R$ 1,756,396 thousand): we are requesting to deduct from income tax and social contributions payable (IRPJ and CSLL, respectively) amounts of actual and definite loan losses related to unconditional discounts granted during collections, regardless if they comply with the terms and conditions provided for in Articles 9 to 14 of Law n° 9430/96 that only apply to temporary losses;

-PIS – EC 17/97 - R$ 321,748 thousand: for the period from July 1997 to February 1998, request to calculate and pay PIS contributions as established by LC 07/70 (PIS Repique) and not as established by EC 17/97 (PIS on Gross Operating Income); and

- PIS - R$ 320,067 thousand (2013 - R$ 310,127 thousand): we are requesting the authorization to offset overpaid amounts in 1994 and 1995 as PIS contribution, corresponding to the surplus paid over that calculated on the tax base established in the Constitution, i.e., gross operating income, as defined in the income tax legislation – (set out in Article 44 of Law n° 4506/64), which excludes interest income.

27.     On April 18, 2016, the Company filed a Form 20-F for the fiscal year ended December 31, 2015 (the "2015 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2015. The

2015 20-F was signed by Defendants Cappi and Glüher. The 2015 20-F also contained signed SOX

certifications by Defendants Cappi and Glüher attesting to the accuracy of financial reporting, the

disclosure of any material changes to the Company's internal controls over financial reporting,

and the disclosure of all fraud.

28.    The 2015 20-F stated that the Company is a party to tax administrative proceedings,

stating in part:

> *Legal proceedings*
>
> We are a party to civil, tax and labor administrative proceedings and lawsuits that
> have arisen during the normal course of our business. We do not have any litigation
> matters that are significant on an individual basis. We believe that there are no suits
> pending or threatened, individually or in the aggregate, that if decided against us
> would have a material adverse effect on our business, financial condition,
> properties, prospects or results of operations.
>
> As of December 31, 2015, we had provisions of R$15,364 million, 19.8% related
> to labor matters, 27.4% related to civil liability cases and 52.8% related to tax
> issues. For additional information, see Note 37 D to our consolidated financial
> statements in "Item 18. Financial Statements."
>
> Probable losses recognized in our consolidated financial statements refer to tax and
> social security matters related to inflation adjustments and legality of certain taxes
> and contributions. The remaining litigation, where the probability of loss is
> considered as possible based on our judgment using available information, are
> related to tax assessments, in the amount of R$9,635 million as of December
> 31, 2015 (R$9,092 million in 2014). We believe these tax assessment notices are
> inconsistent with current law and are therefore not recognized in our consolidated
> financial statements.
>
> We believe that as of December 31, 2015, we have set aside sufficient funds as
> provisions to cover our probable losses from litigation, subject to the inflation-
> indexation requirement for provisions relating to certain tax matters.
>
> *                *                *
>
> **Tax-related matters** – We are also a party to a number of judicial lawsuits and
> administrative proceedings, mainly involving issues related to constitutionality and
> fair interpretation of some tax requirements. Some claims relate to the non-payment
> of taxes which we are contesting; others stem from collections (notifications) of
> supervisory agencies of the Ministry of Finance and aim at recovering taxes we
> understand have already been paid or unduly paid. The amounts we have not paid

in view of these claims have in general been provisioned in conformity with applicable accounting rules and are restated based on criteria established by tax legislation. On the other hand, those taxes to be refunded are only recorded upon final and unappealable judgment recognizing our right. See Note 17 to our consolidated financial statements for a description of our most relevant tax claims.

\*       \*       \*

**b)    Contingent liabilities and tax and social security obligations**

The Organization is a party to a number of labor, civil and tax lawsuits, arising from the normal course of business.

Management recorded provisions based on their opinion and that of their legal counsel, the nature of the lawsuit, similarity to previous lawsuits, complexity and the courts standing, where the loss is deemed probable.

Management considers that the provision is sufficient to cover losses generated by the respective lawsuits.

Liability related to litigation is held until the conclusion to the lawsuit, represented by judicial decisions, with no further appeals or due to the statute of limitation.

\*       \*       \*

**c)    Tax and social security obligations**

The Organization is disputing the legality and constitutionality of certain taxes and contributions in court, for which provisions have been recorded in full, although there is good chance of a favorable outcome, based on the opinion of Management and their legal counsel. The processing of these legal obligations and the provisions for cases for which the risk of loss is deemed as probable is regularly monitored in the legal court. During or after the conclusion of each case, a favorable outcome may arise for the Organization, resulting in the reversal of the related provisions. The main cases are:

-       PIS and COFINS – R$ 2,115,466 thousand (2014 - R$ 1,818,412 thousand): a request for authorization to calculate and pay PIS and COFINS based on effective billing, as set forth in Article 2 of Supplementary Law nº 70/91, removing from the calculation base the unconstitutional inclusion of other revenues other than those billed;

-       INSS Autonomous Brokers – R$ 1,794,380 thousand (2014 - R$ 1,531,540 thousand): discussing the charging of social security contribution on remunerations paid to third-party service providers, established by Supplementary Law nº 84/96 and subsequent regulations/amendments, at 20.0% with an additional

17

2.5%, on the grounds that services are not provided to insurance companies but to policyholders, thus being outside the scope of such a contribution as provided for in item I, Article 22 of Law nº 8,212/91, as new wording in Law nº 9,876/99;

-    IRPJ/CSLL on credit losses – R$ 1,880,905 thousand (2014 - R$ 2,059,542 thousand): we are requesting to deduct from income tax and social contributions payable (IRPJ and CSLL, respectively) amounts of actual and definite loan losses related to unconditional discounts granted during collections, regardless of compliance with the terms and conditions provided for in Articles 9 to 14 of Law nº 9,430/96 that only apply to temporary losses;

-    PIS – EC 17/97 - R$ 233,597 thousand (2014 - R$ 321,748): for the period from July 1997 to February 1998, request to calculate and pay PIS contributions as established by LC 07/70 (PIS Repique) and not as established by EC 17/97 (PIS on Gross Operating Income);

29.    The statements referenced in ¶¶ 19 – 28 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Banco Bradesco was engaged in a bribery scheme in collusion with the Brazilian Finance Ministry's CARF; (2) Banco Bradesco executives were plotting to avoid an $828 million tax fine that was imposed by Brazil's Internal Revenue Service; (3) Banco Bradesco's CEO, Defendant Cappi, and other executives, directors and employees of the Company had engaged in bribery, money laundering, and corruption; (4) Banco Bradesco's internal control over financial reporting and its disclosure controls and procedures were not effective; and (5) as a result, Banco Bradesco's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

30.    On March 26, 2015 during aftermarket hours, *Reuters* published an article entitled "UPDATE 2-Brazil uncovers multibillion-dollar tax fraud at Finance Ministry", stating that

Brazilian authorities have uncovered a tax fraud scheme which may have cost taxpayers up to 19 billion reais ($5.96 billion), stating in pertinent part:

**Markets** | Thu Mar 26, 2015 5:18pm EDT

**UPDATE 2-Brazil uncovers multibillion-dollar tax fraud at Finance Ministry**

(Adds raid on Banco Safra)

By Anthony Boadle

**Brazilian authorities on Thursday said they uncovered a tax fraud scheme at the Finance Ministry's tax appeals board that may have cost taxpayers up to 19 billion reais ($5.96 billion).**

The news came in the midst of a multibillion-dollar corruption scandal at state oil company Petroleo Brasileiro SA , known as Petrobras, that has rattled Brazil's political establishment and weighed on the fragile economy.

In the latest case, federal police inspector Marlon Cajado said **companies bribed members of the CARF, a body within the Finance Ministry that hears appeals on tax disputes, to get favorable rulings that reduced or waived the amounts owed.**

Cajado said 70 industrial, agricultural, civil engineering **and financial companies**, including banks, were being investigated on suspicion of bribing tax officials.

Early on Thursday, police raided the offices of the tax appeals board in Brasilia, and the homes and offices of tax consultants and lawyers suspected of acting as intermediaries.

They also raided the headquarters of Banco Safra SA , Brazil's eighth largest bank, owned by Lebanese-Brazilian billionaire Joseph Safra and his family, according to two sources with knowledge of the situation.

**So far, investigators have detected suspect appeals rulings that cost the state 5 billion reais in tax evasion and are probing other cases that could raise the total to 19 billion reais, Brazil's tax agency said in a statement.**

**The cases under investigation came before the board between 2005 and 2013,** well before current Finance Minister Joaquim Levy took office. While Levy will not be held responsible, the tax fraud case could worsen the political climate at a time when the popularity of President Dilma Rousseff's government has plummeted due to the Petrobras scandal and a stagnant economy.

"It further clouds the atmosphere," said a Finance Ministry official who requested anonymity due to the sensitivity of the matter. "Our only alternative is to crack down on corruption."

Police seized documents and 1.3 million reais in cash in the raids in three cities, but no arrests occurred, Cajado said at a news conference.

**He said companies paid bribes of up to 10 percent to "manipulate" rulings in cases that involved between 1 and 3 billion reais in taxes due.**

The suspects face charges of influence peddling, corruption, criminal conspiracy and money-laundering, which carry prison sentences of up to 50 years. Companies accused of paying to obtain favorable rulings will have their cases reopened.

($1=3.19 Brazilian reais) (Additional reporting by Guillermo Parra-Bernal; Editing by Lisa Von Ahn and Leslie Adler)

[Emphasis added].

31.     On March 27, 2015, *Associated Press* published an article entitled "Brazil police report massive tax fraud scheme", stating that Brazil's Federal Police agency brought legal proceedings against more than 50 companies in the industrial, financial and agricultural sectors for allegedly bribing officials at the CARF to reduce or annul fines or unpaid taxes, and that the companies are suspected of evading almost $2 billion in unpaid fines and taxes, stating in pertinent part:

**Brazil police report massive tax fraud scheme**

Brazil police report massive tax fraud scheme that has caused almost $2 billion in losses

By **Stan Lehman, Associated Press**
March 27, 2015 11:47 AM

SAO PAULO (AP) -- **Brazil's Federal Police agency said Friday it has begun legal proceedings against companies allegedly involved in a fraud scheme that has cost the public coffers almost $2 billion in unpaid fines and taxes**.

It came a day after police said they had uncovered "criminal organizations" suspected of causing a shortfall of at least 6 billion reais ($1.9 billion) in unpaid

taxes. Police said in a statement that the shortfall could be as high as 19 billion reais ($6 billion).

A federal police press officer said Friday that more than 50 companies in the industrial, **financial** and agricultural sectors are being investigated for allegedly **bribing officials at the Finance Ministry's tax appeals court to reduce or annul fines on unpaid taxes**. He spoke on condition of anonymity because he was not authorized to speak on the matter.

He would not name any of the companies being investigated.

The federal police statement said the investigation that began in 2013 found that officials of the tax appeals court leaked information to consulting and law firms in Brasilia, Sao Paulo and other cities to find companies interested in having their tax-court proceedings "facilitated."

[Emphasis added].

32.      On this news, shares of Banco Bradesco fell $2.19 per share or approximately 20% from its previous closing price to close at $8.86 per share on March 27, 2015, damaging investors.

33.      On March 28, 2015, *O Estado de S. Paulo* published an article entitled "Banks and large companies are the target of research in 'court' Revenue", stating that Banco Bradesco was one of the companies suspected of paying bribes to clear 2.7 billion reais of owed taxes, stating in pertinent part:

BRASILIA - **The Bradesco**, Santander, Safra, Pactual and Bank Boston, Ford and Mitsubishi assemblers, as well as BR Foods food giant are investigated on suspicion of negotiating or paying a bribe to clear debts with the IRS on the Board of Tax Appeals (Carf).

\*      \*      \*

**Are under suspicion also cases involving debts of Bradesco and Bradesco Seguros in the amount of R $ 2.7 billion**.

[Emphasis added].

34.      On May 31, 2016, *Reuters* published an article entitled "UPDATE 1-Bradesco stock slumps as CEO Trabuco indicted in Brazil tax probe", stating that Brazil's federal police

indicted Banco Bradesco executives, including Defendant Cappi, on corruption-related charges,

and that police accused the executives of plotting to avoid a 3 billion-real ($828 million) tax fine,

stating in pertinent part:

### UPDATE 1-Bradesco stock slumps as CEO Trabuco indicted in Brazil tax probe

Guillermo Parra-Bernal and Tatiana Bautzer
Tuesday, 31 May 2016 | 2:54 PM ET Reuters

(Recasts to add details, share performance, confirmation throughout)

SAO PAULO, May 31 (Reuters) - **Shares in Banco Bradesco SA, Brazil's No. 2 private-sector bank, posted their biggest intraday drop in almost seven months on Tuesday after Chief Executive Officer Luiz Carlos Trabuco and two senior executives were indicted in a sweeping tax probe.**

The office of Brazil's Prosecutor-General told Reuters that a report from the federal police with the indictments of Trabuco and the executives had been received earlier in the day. Bradesco, based in Osasco city, had no immediate comment.

According to a source briefed on the matter, the other two Bradesco executives in the investigation are Chief Financial Officer Luiz Carlos Angelotti and Domingos de Abreu, a senior vice president. **The police had been investigating alleged negotiations between the executives and tax auditors over the elimination of a 3 billion-real ($828 million) fine that the country's Tax Revenue Service had imposed on Bradesco.**

Nonvoting shares, Bradesco's most widely traded class of stock, fell as much as 7.3 percent to 22.23 reais, the biggest intraday decline since Nov. 11. Voting shares fell 3.4 percent, while Bradesco's New York-traded stock tumbled 5.5 percent to $6.275 per American depositary receipt.

($1 = 3.6240 Brazilian reais)

(Additional reporting by Eduardo Simões in São Paulo and Marcela Ayres in Brasilia; Editing by Cynthia Osterman)

[Emphasis added].

35.     On May 31, 2016, *Bloomberg* published an article entitled "Bradesco CEO

Trabuco, Two Managers Face Charges in Brazil", stating that Brazil's federal police indicted

Banco Bradesco executives, including Defendant Cappi, on corruption-related charges as part of

Operation Zelotes, stating in pertinent part:

### Bradesco CEO Trabuco, Two Managers Face Charges in Brazil

by        Julia Leite        Francisco Marcelino

May 31, 2016 — 2:57 PM EDT Updated on May 31, 2016 — 5:58 PM EDT

**Banco Bradesco SA Chief Executive Officer Luiz Carlos Trabuco Cappi and two other company executives were accused by Brazil federal police in the so-called Zelotes fraud probe**.

The action against Trabuco, 64, was confirmed by a representative of federal prosecutors in Brasilia who declined to identify the two other executives. **The case is tied to alleged corruption and money laundering**, O Estado de S.Paulo newspaper reported earlier Tuesday, without specifying the accusations against the executives.

Bradesco is the third Brazilian bank to become mired in scandal since November, as corruption probes in Latin America's biggest economy show no sign of abating amid a political and economic crisis that led to the temporary removal of President Dilma Rousseff. The two-year Zelotes investigation centers on exposing fraudulent activities involving Brazil's board of tax appeals, a unit of the finance ministry, and has ensnared other business leaders in the country.

"The news about the investigation weighs on Bradesco, for sure, but also brings uncertainty to the overall market," said Fernando Goes, an analyst at Clear Corretora brokerage. "Every day we see politicians involved in the cases, but now it's getting to the companies as well. Nobody knows who else could be involved."

**Angelotti, Abreu**

The other two Bradesco bankers accused in the case are Executive Managing Director Luiz Carlos Angelotti, 51, and Executive Vice President Domingos de Abreu, 57, said a person familiar with the situation who asked not to be identified because the matter isn't public. In a statement, Bradesco denied hiring a company that prosecutors are investigating and said its CEO didn't participate in meetings with that entity. Angelotti and declined to comment, and the bank wouldn't make the other executives available for comment.

Bradesco shares tumbled 5 percent to 22.80 reais, the biggest one-day drop since March 15. The bank's $1.1 billion in subordinated notes due 2022 dropped 1.99 cents to 101.78 cents on the dollar, the most for a single session since September. Its bonds due 2019 and 2021 also fell.

[Emphasis added].

36.     On this news, shares of Banco Bradesco fell $0.37 per share or approximately 6% from its previous closing price to close at $6.26 per share on May 31, 2016, damaging investors.

37.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Banco Bradesco ADSs traded on the NYSE during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

39.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Banco Bradesco ADSs were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Banco Bradesco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Banco Bradesco;

- whether the Individual Defendants caused Banco Bradesco to issue false and misleading public statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading public statements;

- whether the prices of Banco Bradesco ADSs during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

44. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Banco Bradesco ADSs are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADSs; and

- Plaintiff and members of the Class purchased and/or sold Banco Bradesco ADSs between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

45. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

46. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     This Count is asserted against Banco Bradesco and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

49.     During the Class Period, Banco Bradesco and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Banco Bradesco and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Banco Bradesco ADSs during the Class Period.

51.     Banco Bradesco and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Banco Bradesco were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Banco Bradesco, their control over, and/or receipt and/or modification of Banco Bradesco allegedly materially misleading statements, and/or their associations with the Company which

made them privy to confidential proprietary information concerning Banco Bradesco, participated in the fraudulent scheme alleged herein.

52.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Banco Bradesco personnel to members of the investing public, including Plaintiff and the Class.

53.     As a result of the foregoing, the market price of Banco Bradesco ADSs was artificially inflated during the Class Period. In ignorance of the falsity of Banco Bradesco's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Banco Bradesco ADSs during the Class Period in purchasing Banco Bradesco ADSs at prices that were artificially inflated as a result of Banco Bradesco's and the Individual Defendants' false and misleading statements.

54.     Had Plaintiff and the other members of the Class been aware that the market price of Banco Bradesco ADSs had been artificially and falsely inflated by Banco Bradesco's and the Individual Defendants' misleading statements and by the material adverse information which Banco Bradesco's and the Individual Defendants did not disclose, they would not have purchased Banco Bradesco's ADSs at the artificially inflated prices that they did, or at all.

55.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

56.     By reason of the foregoing, Banco Bradesco and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to

the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Banco Bradesco ADSs during the Class Period.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act**
**Against The Individual Defendants**

57.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58.   During the Class Period, the Individual Defendants participated in the operation and management of Banco Bradesco, and conducted and participated, directly and indirectly, in the conduct of Banco Bradesco's business affairs. Because of their senior positions, they knew the adverse non-public information regarding Banco Bradesco's business practices.

59.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Banco Bradesco's financial condition and results of operations, and to correct promptly any public statements issued by Banco Bradesco which had become materially false or misleading.

60.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Banco Bradesco disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Banco Bradesco to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Banco Bradesco within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Banco Bradesco ADSs.

61.     Each of the Individual Defendants, therefore, acted as a controlling person of Banco Bradesco. By reason of their senior management positions and/or being directors of Banco Bradesco, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Banco Bradesco to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Banco Bradesco and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

62.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Banco Bradesco.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: June 3, 2016                              Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**


/s/ Phillip Kim
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Plaintiff*