**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BANCO BRADESCO S.A. SECURITIES LITIGATION | Civil Case No. 1:16-cv-04155 (GHW)  ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING**
**PROPOSED CLASS ACTION SETTLEMENT AND AUTHORIZING**
**DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT .............................................................................1

II.  NATURE AND HISTORY OF THE ACTION ...................................................3

III.  THE PROPOSED SETTLEMENT .....................................................................6

IV.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .................7

    A.  Standards Governing Approval of Class Action Settlements ................................7

    B.  The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2) .................................................................................9

        1.  "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2) ....................9

        2.  The Settlement's Terms Are Adequate ...................................................11

            a.  The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation............11

            b.  The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member ................................................................14

            c.  The Anticipated Request for Attorneys' Fees is Reasonable........15

            d.  Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement...............................................16

V.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ......................17

VI.  THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS ..........................21

    A.  The Proposed Method of Disseminating Notice of the Settlement to the Settlement Class is Reasonable and Warrants Approval ......................................22

    B.  The Proposed Notices Clearly and Concisely Inform Settlement Class Members About the Settlement's Terms and Their Rights .................................23

VII.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ..........................25

VIII.  CONCLUSION...........................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ..........................................................................23

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................17, 20

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................................14

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ......................................................................16, 21

*In re Bear Stearns Cos., Inc. Sec., Deriv. and ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).....................................................................14

*In re Celestica Inc. Sec. Litig.*,
   2014 WL 4160216 (S.D.N.Y. Aug. 20, 2014)..........................................................19

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ...........................................................12

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ..........................................................................14

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..................................................................................9

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) .......................................................16, 24

*Ebin v. Kangadis Food Inc.*,
   297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................18

*Edwards v. N. Am. Power & Gas, LLC*,
   2018 WL 3715273 (D. Conn. Aug. 3, 2018) ............................................................22

*Enea v. Bloomberg, L.P.*,
   2014 WL 1044027 (S.D.N.Y. Mar. 17, 2014) ..........................................................19

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
   343 F. Supp. 3d 394 (S.D.N.Y. 2018).....................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)..................................................................................19

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ...................................................................18

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................10, 11, 16

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................17

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................17

*In re Lehman Bros. Sec. & ERISA Litig.*,
2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) ...........................................20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2018 WL 3475465 (S.D.N.Y. July 19, 2018) .........................................8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................20

*McLaughlin v. IDT Energy*,
2018 WL 3642627 (E.D.N.Y. July 30, 2018) .........................................22

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)................................................ 12-13

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016) ..........................................19

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
2016 WL 3369534 (S.D.N.Y. May 2, 2016) ...........................................16

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)........................................................................ 11-12

*In re Parmalat Sec. Litig.*,
2008 WL 3895539 (S.D.N.Y. Aug. 21, 2008)........................................18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) ..........................................12

*In re Platinum & Palladium Commod. Litig.*,
2014 WL 3500655 (S.D.N.Y. Jul. 15, 2014) .........................................8-9

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................ 10-11

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
277 F.R.D. 97 (S.D.N.Y. 2011) ................................................................18

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................15

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)....................................................................20

*Velez v. Majik Cleaning Serv., Inc.*,
2007 WL 7232783 (S.D.N.Y. June 25, 2007) ........................................14

*Velez v. Novartis Pharm. Corp.*,
2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)........................................16

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)...................................................................... 18-19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................8, 10, 23

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)........................................24

*Yang v. Focus Media Holding Ltd.*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).........................................11

*Yuzary v. HSBC Bank USA, N.A.*,
2013 WL 1832181 (S.D.N.Y. Apr. 30, 2013)...........................................8

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...................................................................................15

15 U.S.C. § 78u-4(a)(7) ...................................................................................24

**Other Authorities**

Fed. R. Civ. P. 23(b)(3)....................................................................................20

Fed. R. Civ. P. 23(c) ........................................................................................21

Fed. R. Civ. P. 23(e) .................................................................................. *passim*

William B. Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2015).............. 22-23

Court-appointed Lead Plaintiff Public Employees' Retirement System of Mississippi ("Mississippi" or "Lead Plaintiff") respectfully submits this Memorandum of Law in support of its unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Federal Rules" or "Rules"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted herewith. Defendants do not oppose Lead Plaintiff's request for entry of the Preliminary Approval Order.[1]

## I.   PRELIMINARY STATEMENT

Following nearly three years of highly-contested litigation, the Parties have reached an agreement to resolve all claims against Defendants in this Action and related claims pursuant to the accompanying Stipulation. By the Settlement, Lead Plaintiff, through its counsel, has obtained $14,500,000 for the benefit of the Settlement Class.

The Settlement is the product of extensive litigation, as well as well-informed and hard-fought arm's-length negotiations by experienced counsel. By the time the Settlement was reached, Lead Plaintiff and its counsel had, *inter alia*: (i) conducted an extensive investigation; (ii) filed the detailed Amended Complaint; (iii) briefed Defendants' motion to dismiss; (iv) engaged in substantial discovery, including seeking documents from multiple Brazilian authorities and entities by means of Letters Rogatory through The Hague Convention; (v) retained an economist expert in connection with class certification proceedings; (vi) consulted with a damages expert; (vii) briefed a motion for class certification and a related motion for leave to add Boilermaker-Blacksmith as an additional class representative; (viii) defended depositions of both proposed class representatives and Mississippi's investment advisor; (ix) defended the deposition of Lead

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 1, 2019 ("Stipulation"), attached as Exhibit A to the Declaration of Andrew L. Zivitz submitted herewith (the "Zivitz Declaration").

Plaintiff's class certification expert and conducted the deposition of Defendants' class certification expert; (x) commenced preparation for a two-day evidentiary hearing and oral argument related to class certification; and (xi) engaged in formal mediation with Defendants' Counsel, under the auspices of a well-respected mediator, which included pre-mediation briefing and expert analyses.

As a result of these and other efforts discussed herein, Lead Plaintiff and its counsel were wholly aware of the strengths and weaknesses of Lead Plaintiff's claims, and made a fully-informed evaluation of the risks of continued litigation and the fairness of the Action's resolution at this time. Lead Plaintiff respectfully submits that the Settlement appropriately balances Lead Plaintiff's objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that it could receive a smaller recovery—*or no recovery*—if the Action continued. Moreover, Lead Plaintiff and its counsel believe that the Settlement is in the best interest of the Settlement Class, and ultimately should be approved by the Court.

At this time, Lead Plaintiff seeks the Court's entry of the Preliminary Approval Order, which will start the process of considering final approval of the Settlement by authorizing notice of the Settlement's terms and conditions to investors who are believed to be Settlement Class Members. The Preliminary Approval Order also will set a final hearing (i.e., "Settlement Fairness Hearing") for the Parties and Settlement Class Members to present arguments and evidence for and against the Settlement. At this hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to make a determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

Preliminary approval of the Settlement will begin this process by, among other things:

- preliminarily approving the terms of the Settlement set forth in the Stipulation;

- provisionally certifying the Settlement Class and appointing Lead Plaintiff as class representative and Lead Counsel as class counsel, for purposes of the Settlement only;

- approving retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator;

- approving the form and content of the full Notice, Postcard Notice, Claim Form and Summary Notice attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order;

- approving the proposed procedures for providing notice to the Settlement Class through mailing of the Postcard Notice, posting of the Notice and Claim Form on a website designed for the Settlement, and publication of the Summary Notice as the best notice practicable under the circumstances and complying with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

- setting a schedule for: (i) providing notice to the Settlement Class; (ii) Settlement Class Members to request exclusion from the Settlement Class; (iii) Settlement Class Members to object to the Settlement, or any part thereof; (iv) Settlement Class Members to submit Claim Forms in order to be potentially eligible to share in the Net Settlement Fund; (v) submitting papers in support of final approval of the Settlement and related matters; and (vi) the Settlement Fairness Hearing, at which the Court will consider final approval of the Settlement, as well as approval of the Plan of Allocation and Lead Counsel's request for attorneys' fees and Litigation Expenses, including reimbursement of costs to Plaintiffs pursuant to the PSLRA.

For the reasons set forth herein, Lead Plaintiff respectfully submits that the Settlement warrants the Court's preliminary approval and respectfully requests that the Court enter the Preliminary Approval Order.

## II.    NATURE AND HISTORY OF THE ACTION

This case arose out of the Brazilian Federal Police's multi-year investigation into the alleged bribery of Brazilian tax officials (i.e., "Operation Zealots"), which revealed that, during the relevant time period, Defendants, as alleged, offered to pay millions of dollars in bribes in exchange for billions of dollars in favorable tax rulings and benefits for Bradesco. Specifically, Lead Plaintiff alleged that Bradesco and three of its senior executives, Luiz Carlos Trabuco Cappi ("Trabuco"), Luiz Carlos Angelotti ("Angelotti"), and Domingos Figueiredo de Abreu ("Abreu") violated the federal securities laws by issuing false and misleading statements and failing to disclose material adverse facts concerning Bradesco's Code of Ethics and compliance measures in an attempt to conceal this tax bribery scheme. Lead Plaintiff further alleged that the price of

Bradesco PADS was artificially inflated during the relevant time period as a result of Defendants' alleged misstatements and omissions and, when the relevant truth was revealed, the price of the PADS declined, injuring Settlement Class Members.

This securities class action commenced on June 3, 2016. ECF No. 1. Following briefing, and pursuant to the PSLRA, the Court, on August 15, 2016, appointed Mississippi as Lead Plaintiff for the proposed class and approved Mississippi's selection of Kessler Topaz Meltzer & Check, LLP as Lead Counsel and Labaton Sucharow LLP as Liaison Counsel. ECF No. 24.

The operative complaint, the Amended Complaint, was filed on October 21, 2016. ECF No. 45. The Amended Complaint asserted claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder against Bradesco, its Chief Executive Officer, Trabuco, its Managing Officer and Investor Relations Officer, Angelotti, and its Executive Vice President, Abreu. Prior to filing the Amended Complaint, Lead Plaintiff and its counsel conducted a thorough investigation into the asserted claims which included analyzing: (i) documents filed publicly by Bradesco with the United States Securities and Exchange Commission ("SEC") and the Brazilian Comissão de Valores Mobiliários ("CVM"); (ii) publicly available information and data, including securities analysts' reports, transcripts of Bradesco conference calls, press releases, and media reports published in the United States and Brazil concerning Bradesco and Operation Zealots; (iii) documents, criminal complaints and other evidence submitted by Brazilian prosecutors and other Brazilian governmental authorities in Brazilian federal court proceedings; and (iv) the applicable law governing Lead Plaintiff's claims and potential defenses thereto. Lead Counsel also retained and consulted with Brazilian counsel at Deffenti & Queiroz Advogados.

On December 23, 2016, defendants moved to dismiss the Amended Complaint (ECF Nos. 63-65), which Lead Plaintiff opposed on February 3, 2017 (ECF Nos. 69-70). On March 3, 2017, defendants filed a reply in support of their motion. ECF Nos. 73-74. By Opinion and Order dated September 29, 2017, the Court granted in part and denied in part the motion to dismiss ("MTD Order"). ECF No. 84. Pursuant to the MTD Order, the Court (i) sustained claims under § 10(b) of the Exchange Act and Rule 10b-5 thereunder with respect to certain statements made by Bradesco, Trabuco and Angelotti; (ii) sustained claims under § 20(a) of the Exchange Act against Trabuco; and (iii) granted defendants' motion to dismiss in all other respects, including all claims against Abreu. *Id.* Defendants answered the Amended Complaint on January 31, 2018, and filed an amended answer on April 6, 2018. ECF Nos. 101 & 106.

Following the MTD Order, discovery commenced. Among other things, Lead Plaintiff served document requests upon Defendants, and the Parties met and conferred on several occasions regarding search terms, custodians and the scope of production. At the time of settlement, Defendants had produced approximately 65,000 pages of documents in response to such requests. In addition, Lead Plaintiff drafted and submitted to the Court for issuance seven letters of request to be served on various Brazilian authorities and entities. Specifically, on April 10, 2018, Lead Plaintiff filed its Motion for Issuance of Letters of Request for International Judicial Assistance pursuant to the Hague Convention of 18 March 1970 (ECF Nos. 107-08), which motion was opposed by Defendants. *See* ECF Nos. 110-12. Pursuant to Orders entered on April 20, 2018 and April 30, 2018 (ECF Nos. 113 & 116), the Court issued the letters of request on May 3, 2018.

Thereafter, on August 17, 2018, Lead Plaintiff moved for certification of the class ("Motion to Certify"), including appointment of Lead Plaintiff and Boilermaker-Blacksmith as class representatives. ECF Nos. 137-140. On August 21, 2018, Defendants filed a letter seeking a pre-

motion conference regarding Defendants' proposed motion to strike Lead Plaintiff's addition of Boilermaker-Blacksmith. ECF No. 143. Lead Plaintiff responded to Defendants' letter on August 27, 2018. ECF No. 145. On September 14, 2018, following a telephone conference with the Court, and pursuant to the Court's request, Lead Plaintiff moved for leave to add Boilermaker-Blacksmith as a proposed class representative ("Motion to Add"). Both motions were fully briefed and pending at the time of settlement. ECF Nos. 149-152. In furtherance of these motions, both Plaintiffs, along with Mississippi's investment advisor, responded to document requests, produced over ten thousand pages of documents collectively and sat for depositions. The Parties' class certification experts also were deposed. Lead Plaintiff also had begun preparation for a May 14-15, 2019 evidentiary hearing regarding its Motion to Certify at the time the Parties agreed to settle.

## III.   THE PROPOSED SETTLEMENT

While Lead Plaintiff's Motion to Certify and Motion to Add were pending, the Parties agreed to explore the possibility of settlement and engaged Jed D. Melnick, Esq. of JAMS and The Weinstein Melnick Team to facilitate their negotiations. In advance of their mediation with Mr. Melnick in April 2018, the Parties exchanged detailed mediation statements setting forth their respective positions. At the mediation, following hard-fought negotiations, the Parties agreed to settle the Action and executed a Term Sheet setting forth the material terms of their agreement.

The Parties subsequently negotiated the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against Defendants in the Action, and related claims, in return for a $14.5 million cash payment for the benefit of the Settlement Class. In accordance with the Stipulation, Defendants shall pay or cause to be paid the Settlement Amount into the Escrow Account following preliminary approval of the Settlement. *See* Stipulation ¶ 9. The Settlement Amount, plus accrued interest, after deduction of any attorneys' fees and Litigation Expenses awarded by the Court, Taxes and Tax Expenses, and Notice and Administration

Costs (the "Net Settlement Fund"), will be distributed among eligible Settlement Class Members in accordance with a plan of allocation to be approved by the Court (discussed below in more detail).

Under the Settlement, the Parties have agreed to certification of the following Settlement Class for settlement purposes only: all persons and entities who purchased or otherwise acquired Bradesco PADS during the period from August 8, 2014 through July 27, 2016, inclusive, and were injured thereby.[2] *See* Stipulation ¶ 1(tt). As discussed below, the proposed Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3), and Lead Plaintiff will request that the Court decide, at or after the Settlement Fairness Hearing, that the Settlement Class should be certified for settlement purposes.

If the Settlement receives the Court's final approval, Settlement Class Members will release the "Released Plaintiffs' Claims" in exchange for the right to participate in the Settlement. *See* Stipulation ¶ 1(oo). The release's scope is reasonable as it is limited to claims related to the purchase, sale, acquisition, disposition or holding of Bradesco PADS during the Settlement Class Period *and* to the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Action. *Id*.

## IV.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.   <u>Standards Governing Approval of Class Action Settlements</u>

Rule 23(e) requires judicial approval for a compromise of claims brought on a classwide basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class . . . may be settled . . . only with

---

[2] Excluded from the Settlement Class are: (i) Defendants; (ii) the individual Defendants' Immediate Family members; (iii) any person who was an officer or director of Bradesco during the Settlement Class Period; (iv) any firm, trust, corporation, or other entity in which a Defendant has or had a controlling interest; (v) Bradesco's employee retirement and benefit plan(s) and their participants or beneficiaries, to the extent they made purchases or otherwise acquired PADS through such plan(s); and (vi) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person or entity. *Id*. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion that is accepted by the Court.

the court's approval.").[3] Strong judicial policy favors settlement of class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

A district court's review of a proposed class action settlement is a two-step process. First, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and second, after notice has been provided and a hearing has been held, determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). *See also Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) ("Preliminary approval, which is what Plaintiffs seek here, is the first step in the settlement process. It simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input.").

Rule 23(e), as amended, among other things, specifies that the crux of a court's preliminary approval evaluation is whether "giving notice [to the class] is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). These modifications to Rule 23 reflect the longstanding practice of determining whether there is "probable cause to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2018 WL 3475465, at *1 (S.D.N.Y. July 19, 2018). This determination considers the "negotiating process leading up to the settlement, i.e., procedural

---

[3] Unless otherwise noted, all emphasis in quotations is added, and internal quotation marks, citations and footnotes are omitted.

fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *In re Platinum & Palladium Commod. Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. Jul. 15, 2014). Amended Rule 23(e) does not change this fundamental inquiry; rather Rule 23(e) now "focus[es]" the Court's inquiry on "the preliminary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal,"—that is, whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4] Each of these factors is satisfied here.

**B.   The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

**1.   "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Court's may consider "the nature and amount of discovery in this or

---

[4] At the final approval stage, the Court will also be asked to consider the Second Circuit approval factors—many of which overlap with the Rule 23(e)(2) factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), *see also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendments (noting that Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id. See also Visa*, 396 F.3d at 116 (finding "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been actively litigating this Action since June 2016. Lead Counsel's settlement posture was informed by, among other things, the significant work performed in responding to the motion to dismiss, the Parties' substantial discovery efforts, and full briefing on class certification. Armed with this knowledge, Lead Counsel—who has extensive experience litigating securities class actions—conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class, while at the same time accounting for the risks of continued litigation. *See, e.g., In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 412 (S.D.N.Y. 2018) (finding support for settlement where plaintiffs and their counsel had a "sufficient understanding of the case to gauge the strengths and weaknesses of their claims as well as the adequacy of the settlement").[5] Additionally, Plaintiffs—sophisticated investors who claim to have suffered damages as a result of their purchases of Bradesco PADS during the Settlement Class Period—have claims that are typical of and coexistent with those of other Settlement Class Members, and like the rest of the Settlement Class, have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of

---

[5] *See also In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (presumption of fairness where parties were represented by experienced counsel and the case "proceeded well into both class certification and merits discovery before settlement was reached.").

maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

*Second*, the Parties' settlement negotiations were at arm's-length and facilitated by an experienced mediator. At Mr. Melnick's direction, the Parties submitted comprehensive mediation statements prior to the April 2019 mediation. It was only after hard-fought negotiations at the mediation concerning the perceived strengths and weaknesses of their respective cases that the Parties were ultimately able to reach an agreement-in-principle to resolve the Action. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("The participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *Giant Interactive*, 279 F.R.D. at 160 (the fact that "settlement was the product of prolonged, arms-length negotiation, including as facilitated by a respected mediator" established that it was "procedurally fair").

### 2. The Settlement's Terms Are Adequate

Rule 23(e)(C) and (D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents an excellent result for the Settlement Class. And Lead Counsel, with the assistance of a damages consultant, has proposed a plan for allocating the Settlement proceeds that ensures all Settlement Class Members will be treated equally relative to their respective losses.

### a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing approval of a class action settlement is plaintiff's likelihood of success on the merits, balanced against the relief offered in the settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and

costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 359981, at *48 (E.D.N.Y. Jan. 28, 2019) (in considering reasonableness, "a court must compare the terms of the compromise with the likely rewards of litigation").

The Settlement provides for a cash recovery of $14.5 million. Lead Plaintiff's damages consultant has estimated aggregate damages in this case to range from $130.8 million to $179.1 million based on two multi-trader damages models. The Settlement represents between approximately 8% and 11% of this aggregate damages range. Importantly, this damages estimate assumes that Lead Plaintiff would be able to prove damages based on *all four* alleged corrective disclosures and that it would not need to disaggregate, or parse out, confounding non-fraud related information on those dates. Lead Plaintiff recognizes, however, that certain of the alleged corrective disclosures would have been difficult to prove had the Action continued. If Defendants succeeded in having one or more of the corrective disclosures dismissed at summary judgment, or succeeded in proving that Lead Plaintiff had not adequately disaggregated confounding information, damages would be reduced dramatically. In recognition of these hurdles to establishing damages and the possibility of losing several corrective disclosures, Lead Plaintiff's damages consultant estimates that recoverable damages realistically could fall within the range of $34.4 million to $65.5 million. The Settlement represents between approximately 22% and 42% of this damages range. *See, e.g., In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving settlement

representing approximately 6.25% of estimated damages and noting recovery was at the "higher end of the range of reasonableness of recovery in class actions securities litigations").[6]

Furthermore, if the Action had continued, Lead Plaintiff and the members of the Settlement Class would have faced numerous risks that could have precluded securing any recovery at all. Indeed, the Settlement came at a moment of substantial uncertainty in the litigation, with Lead Plaintiff's Motion to Certify and Motion to Add both pending. Although Lead Counsel was confident of its prospect of success on these motions, an adverse decision on either one could have drastically limited the scope of the class (and damages). And even if Lead Plaintiff succeeded in obtaining certification of the full class, it still faced a likely summary judgment motion, potential *Daubert* motions, trial, and appeals. Defendants strenuously argued that Lead Plaintiff had no admissible evidence to support its allegations that Bradesco's executives participated in a bribery scheme and that this case would be dismissed on the merits.

As noted above, Lead Plaintiff also would have confronted considerable challenges in establishing loss causation and damages. In particular, at class certification, Defendants argued that there was no statistically significant decline in the price of Bradesco PADS in response to the relevant news on three of the four alleged corrective disclosure dates. With respect to the fourth date—May 31, 2016—the Parties' experts disagreed as to the cause of the decline, with Lead Plaintiff's expert contending that the decline was caused by new information that revealed the falsity of Defendants' alleged misstatements and Defendants' expert asserting that the decline was more likely caused by investor concern over the future tenure of Bradesco's CEO, Trabuco,

---

[6] *See also* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting, Jan. 29, 2019, https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf, at 35 (finding median settlement between 1996 and 2018 in securities cases with investor losses between $20 million to $49 million recovered 8.4% of investor losses; between $50 million and $99 million recovered 4.7% of investor losses and between $100 million and $199 million recovered 3.1% of investor losses).

without regard for the truth or falsity of the alleged misstatements. Ultimately, the issue of damages would have come down to an unpredictable battle of the experts. *See In re Bear Stearns Cos., Inc. Sec., Deriv. and ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Thus, the Settlement "benefits each plaintiff in that he or she will recover a monetary award immediately, without having to risk that an outcome unfavorable to the plaintiffs will emerge from a trial." *Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). The Settlement also avoids the expense and delay of continuing to prosecute this litigation. *See generally In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("A trial of a complex, fact-intensive case like this could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").

### b.   The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member

The Court must also ultimately assess the Settlement's effectiveness in distributing relief to members of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan of Allocation ("Plan") that Lead Plaintiff proposes provides for a straightforward and effective means of distributing the Net Settlement Fund to the Settlement Class, and treats Settlement Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D).

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan provides for distribution of the Net Settlement Fund to Settlement Class Members who submit a timely and valid Claim Form demonstrating that they have a loss on their transactions in Bradesco PADS purchased or otherwise acquired during

14

the Settlement Class Period. The formula to apportion the Net Settlement Fund among Settlement Class Members, which was developed in consultation with Lead Plaintiff's damages consultant, is based on the estimated amount of artificial inflation in the price of Bradesco PADS over the course of the Settlement Class Period that was allegedly caused by Defendants' misconduct. The Plan apportions the Net Settlement Fund among Settlement Class Members based on when they purchased, acquired, and/or sold their Bradesco PADS, and was created without consideration of Plaintiffs' individual transactions.[7] This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach."). Accordingly, the Plan applies equitably to all Settlement Class Members.[8]

### c.   The Anticipated Request for Attorneys' Fees is Reasonable

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, plus reimbursement of reasonable costs and expenses incurred

---

[7]  As set forth in the Notice, based on Lead Plaintiff's damages consultant's estimate of the number of PADS that may have been affected by the alleged misconduct, and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before deduction of Court-approved fees, expenses, and costs) per eligible PADS is approximately $0.05. This is only an estimate and some Settlement Class Members may recover more or less than this amount depending on, *inter alia*: (i) when and at what price they purchased their PADS; (ii) whether they sold their PADS; (iii) the total value of valid Claims submitted; (iv) the amount of Notice and Administration Costs; and (v) the amount of attorneys' fees and Litigation Expenses awarded by the Court.

[8]  The proposed Notice (Ex. A-1 to the Stipulation) also explains that Lead Counsel's request for expenses may include a request for reimbursement of Plaintiffs' reasonable costs and expenses directly relating to their representation of the Settlement Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) ("The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.").

in prosecuting the Action. A fee of up to 25% is reasonable here, and is supported by case law in this District. *See Velez v. Novartis Pharm. Corp.*, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit."). Moreover, there is ample precedent for granting fees of 25% (or greater) in securities class actions where the recovery obtained for the class is of comparable size.[9] A fee up to 25% would also befit the substantial risks Lead Counsel undertook in pursuing the claims in this Action, its extensive litigation efforts and the excellent recovery obtained for the benefit of the Settlement Class. Further, Settlement Class Members will have an opportunity to weigh in on Lead Counsel's fee request before the Settlement Fairness Hearing.[10]

> **d.**   **Lead Plaintiff Has Identified All Agreements Made in Connection with the Settlement**

In connection with the Settlement, the Parties also have entered into a confidential Supplemental Agreement regarding requests for exclusion, dated July 1, 2019 ("Supplemental Agreement"). *See* Stipulation ¶ 39. The Supplemental Agreement sets forth the conditions under which Defendants can exercise a right to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria stated in the Supplemental

---

[9]   *See, e.g., City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million fund); *Giant Interactive*, 279 F.R.D. at 165 (awarding 33% of $13 million fund).

[10]   Additionally, the timing of payment of Lead Counsel's fees—upon issuance of an order awarding fees— is appropriate, and consistent with common practice in cases of this nature. The Stipulation provides that if the Settlement is ultimately terminated or the fee award is later reduced or reversed, Lead Counsel will refund or repay the subject amount to the Settlement Fund. *See, e.g., NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("the fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest . . .").

Agreement ("Opt-Out Threshold").[11] As is standard practice in securities class actions, the Supplemental Agreement is not being made public in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the Opt-Out Threshold to exact an individual settlement. Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The Supplemental Agreement, Stipulation, and Term Sheet (as noted above) are the only agreements concerning the Settlement entered into by the Parties.

## V.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In connection with final approval, the Court will be asked to certify the Settlement Class—for settlement purposes only—pursuant to Rules 23(a) and (b)(3). For that reason, and pursuant to the recent Rule 23(e) amendments, it is appropriate for the Court to consider, at this stage, whether certification of the Settlement Class is appropriate. Fed. R. Civ. P. 23(e)(1)(B)(ii) (requiring court to direct notice to the class if "giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal.").

Courts have long acknowledged the propriety of certifying a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Moreover, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012). A settlement class must satisfy all the requirements of Rules 23(a) and (b), but the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 593 ("[w]hether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As demonstrated in Lead

---

[11] This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

Plaintiff's class certification briefing (*see* ECF Nos. 137-140) and below, the proposed Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

*First*, the Rule 23(a)(1) numerosity requirement is satisfied because Settlement Class Members are likely to number in the thousands. *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 131 (S.D.N.Y. 2014) (courts in this Circuit "presume that the numerosity requirement is met if a putative class has forty or more members"); *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 105 (S.D.N.Y. 2011) (joinder of 100 investors' claims would be impracticable). As of June 30, 2016—just prior to the end of the Settlement Class Period—720 million Bradesco PADS were outstanding and actively traded on the New York Stock Exchange. *See* Amended Complaint ¶ 209. Therefore, Settlement Class Members are sufficiently numerous that joinder of all members would be impracticable.

*Second*, the Rule 23(a)(2) commonality requirement also is satisfied. Commonality can be shown "where the individual circumstances of class members differ but their injuries derive from a unity course of conduct by a single system." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014). The claims asserted in this Action present questions of law and fact common to all Settlement Class Members, including whether: (i) Defendants' statements and omissions were materially false or misleading; (ii) Defendants' misrepresentations and omissions were made with scienter; (iii) the price of Bradesco PADS was artificially inflated during the relevant time period; and (iv) Defendants' misrepresentations and omissions caused economic harm to Settlement Class Members. *See In re Parmalat Sec. Litig.*, 2008 WL 3895539, at *4 (S.D.N.Y. Aug. 21, 2008) (commonality "requirement has been applied permissively in securities fraud litigation and generally is satisfied where putative class members have been injured by similar material misrepresentations and omissions"); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)

(to satisfy commonality requirement, class members' "claims must depend upon a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

*Third*, the Rule 23(a)(3) typicality requirement is satisfied because "each class member's claim arises from the same course of events and each class member makes similar legal arguments to provide defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Thus, "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met . . . ." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 2016 WL 7409840, at *4 (S.D.N.Y. Nov. 4, 2016). Here, Lead Plaintiff's claims are typical of those of the other members of the Settlement Class—it purchased Bradesco PADS during the Settlement Class Period, at prices allegedly inflated by Defendants' alleged misconduct, and was harmed when the relevant truth was revealed. Further, the proof that Lead Plaintiff would present to establish its claims would also prove other Settlement Class Members' claims.

*Fourth*, the Rule 23(a)(4) adequacy requirement is satisfied because Lead Plaintiff's claims do not conflict with those of other Settlement Class Members, and Lead Counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Celestica Inc. Sec. Litig.*, 2014 WL 4160216, at *5 n.3 (S.D.N.Y. Aug. 20, 2014) ("Courts generally interpret [the adequacy] requirement to mean that the named plaintiffs must be similarly situated to the proposed class in terms of interests and injury, and they may have no interests adverse to those of the putative class."); *Enea v. Bloomberg, L.P.*, 2014 WL 1044027, at *6 (S.D.N.Y. Mar. 17, 2014) ("proposed counsel [must] be able to fairly and adequately represent the interests of the class.").

*Lastly*, this case satisfies Rule 23(b)(3), which requires that common questions of law and fact predominate over individual questions, and that a class action is superior to other methods of adjudication. As discussed above, the common issues relating to Defendants' liability predominate over any individualized issues. *See also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (finding predominance requirement "is satisfied if resolution of *some* of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues of individualized proof"). Further, the core liability issues of the Settlement Class's claims—falsity, materiality, scienter, and loss causation—are issues whose proof can be made on a class-wide basis. Indeed, the Supreme Court has noted that predominance is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625.

Likewise, class certification is the superior method of litigation for these claims.[12] *See In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009) (recognizing that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 440622, at *5 (S.D.N.Y. Jan. 23, 2013) ("This is not a case in which all . . . investors have the means to maintain separate actions and invested large sums. Nor is this a case where the harm to each investor is so highly individualized that each member has an interest in maintaining an individual action."). As noted above, concerns regarding Rule 23(b)(3) manageability are not an issue in a class certified for settlement purposes.

---

[12] In determining whether the "superiority" requirement is met, courts consider: (i) class members' interest in individually controlling the litigation of their own cases; (ii) the extent and nature of other litigation involving the same issues; (iii) the desirability of concentrating the litigation in this forum; and (iv) any difficulties that may be encountered in managing a class action. Fed R. Civ. P. 23(b)(3).

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and 23(b)(3). It is likely that, in connection with final approval of the Settlement, the Court will be able to certify the Settlement Class for purposes of settlement and thus, Lead Plaintiff respectfully submits that the Settlement Class warrants the Court's provisional certification at this time.

## VI. THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2) requires notice to be "the best notice that is practicable under the circumstances." "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot v. Pierson*, 607 F. App'x at 73-74. Moreover, "[t]he adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Id.*

Lead Plaintiff requests that the Court approve the form and content of the proposed Notice, Postcard Notice and Summary Notice,[13] as well as the proposed manner for providing notice of the Settlement to Settlement Class Members as set forth in the Preliminary Approval Order. In connection with approval of notice, Lead Plaintiff also seeks the Court's authorization to retain Epiq as the Claims Administrator to supervise and administer the notice procedure in connection with the proposed Settlement as well as to process Claims. As reflected in the materials attached to the Zivitz Declaration as Exhibit B, Epiq is a nationally recognized notice and claims administration firm with extensive experience in administrating settlements of complex securities class actions. *See also* https://www.epiqglobal.com/en-us/experience/class-action-mass-tort/class-action-administration.

---

[13] *See* Exs. A-1, A-2 and A-4, respectively, to the Stipulation.

A.     **The Proposed Method of Disseminating Notice of the Settlement to the Settlement Class is Reasonable and Warrants Approval**

Lead Plaintiff's proposed method of dissemination provides notice "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). If the Court grants preliminary approval, Epiq, under Lead Counsel's direction, will mail individual notice, in the form of the Postcard Notice, to all Settlement Class Members who can be identified through reasonable effort, including through the shareholder lists of purchasers of record to be provided by Bradesco. *See* Stipulation ¶ 22. To disseminate notice, the Claims Administrator will also utilize its proprietary list of banks, brokerage firms, and nominees ("Nominees") that purchase securities on behalf of beneficial owners.[14] Settlement Class Members will be mailed the full Notice and Claim Form upon request.[15]

The Postcard Notice will provide important information regarding the Settlement, along with the rights of Settlement Class Members in connection therewith, and will direct recipients to the website for the Settlement, www.bancobradescosecuritieslitigation.com (the "Settlement Website") for more information regarding the Settlement, including a downloadable version of the detailed, long-form Notice. Courts routinely allow notice by postcard, such as Lead Plaintiff is requesting here. *See, e.g., McLaughlin v. IDT Energy*, 2018 WL 3642627, at *9 (E.D.N.Y. July 30, 2018) (approving "short-form notice to the proposed settlement class sent as a postcard and a long-form notice distributed via the Internet").[16] Given the potential size of the notice mailing in

---

[14]  The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq*. *See* Stipulation ¶ 43.

[15]  Nominees will be asked to provide e-mail addresses, if available, along with physical mailing addresses for potential Settlement Class Members. Although it is not commonplace for Nominees to provide e-mail addresses for purposes of providing notice in securities class actions, if e-mail addresses are provided, Epiq will also e-mail notice to those potential Settlement Class Members.

[16]  *See also Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard, which directed class members to settlement website); William B.

this Action, individual notice via the Postcard Notice as opposed to mailing the full Notice and Claim Form will provide a substantial savings for the Settlement Class. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014) (approving postcard notice, which directed class members to a website that contained the long notice, in part because a postcard notice helps "to minimize notice costs").[17]

In addition, as set forth in the Preliminary Approval Order, the Summary Notice will be published in the national edition of *Investor's Business Daily* and transmitted over *PR Newswire*. Copies of the Notice and Claim Form, along with other documents and information relevant to the Settlement, will be posted on the Settlement Website.

**B.     The Proposed Notices Clearly and Concisely Inform Settlement Class Members About the Settlement's Terms and Their Rights**

In clear, concise, and plain language, the proposed notices will "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings," as well as provide all information required by Rule 23(c)(2)(B). *Wal-Mart*, 396 F.3d at 114. Collectively, the proposed forms of notice advise of, *inter alia*: (i) the nature of the Action; (ii) the Settlement Class's claims, issues or defenses; (iii) the Settlement's terms; (iv) the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair, reasonable, and adequate; (v) the procedures for requesting exclusion and objecting; (vi) the procedures for entering an appearance; (vii) the procedures for

---

Rubenstein, *Newberg on Class Actions* § 8:28 (5th ed. 2015) ("[N]umerous courts have held that postcard notice is 'more than sufficient.'") (collecting cases).

[17]  As in most securities class actions, a large majority of potential Settlement Class Members are beneficial purchasers whose securities are held in "street name," i.e., the securities are purchased by Nominees in the name of the nominee, on behalf of the beneficial purchasers. At this time, the number of names and addresses that will be provided to Epiq by Nominees cannot be determined with precision; however, Lead Plaintiff's damages consultant and Epiq have both estimated that the number could be in the hundreds of thousands. Mailing the Postcard Notice instead of the full Notice and Claim Form would save approximately $0.566 per mailing (i.e., approximately $0.406 on printing and $0.16 on postage).

submitting a Claim; (viii) the binding effect of a class judgment; (ix) the proposed plan for allocating the Settlement proceeds; (x) the date, time, and place of the Settlement Fairness Hearing; and (xi) how to obtain additional information regarding the Settlement.[18] Both the Postcard and Summary Notices advise potential Settlement Class Members on how to obtain the detailed Notice.

The Notice also sets forth the maximum attorneys' fees and expenses to be sought by Lead Counsel. Specifically, as set forth in the Notice, Lead Counsel will apply for attorneys' fees not to exceed 25% of the Settlement Fund plus reimbursement of Litigation Expenses not to exceed $1.1 million incurred in connection with the Action, which amount may *include* requests for reimbursement of Plaintiffs' reasonable costs up to an aggregate amount of $75,000. As also set forth in the Notice, Lead Counsel has fee-sharing agreements with Liaison Counsel, Labaton Sucharow LLP and additional counsel for Mississippi, Gadow Tyler, PLC, which provide that Lead Counsel will compensate these firms solely from the attorneys' fees that Lead Counsel receives in this Action in amounts commensurate with those firms' efforts in the Action.

This manner of providing notice, which includes notice by first-class mail to Settlement Class Members who can be reasonably identified, supplemented by publication and internet notice, represents "the best notice that is practicable under the circumstances" and satisfies the requirements of Rule 23, due process and all other applicable laws and rules. *See*, *e.g.*, *City of Providence*, 2014 WL 1883494, at *2; *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Accordingly, Lead Plaintiff respectfully submits that the proposed notice program is adequate and should be approved by the Court.

---

[18] The Notice also satisfies the PSLRA's separate requirements by stating: (i) the Settlement amount determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. § 78u-4(a)(7).

## VII.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the below schedule for Settlement-related events. The timing of events is determined by the entry of the Preliminary Approval Order ("Order") and the date of the Settlement Fairness Hearing—which Lead Plaintiff respectfully requests be at least 100 calendar days after the Order's entry, or at the Court's earliest convenience thereafter.

| EVENT | PROPOSED TIMING |
|---|---|
| Deadline for mailing Postcard Notice to potential Settlement Class Members and full Notice and Claim Form to Nominees (Order, ¶ 8(b)) | 30 calendar days after date of entry of the Order ("Notice Date") |
| Deadline for establishing Settlement Website and posting Notice and Claim Form on same (Order, ¶ 8(c)) | On or before the Notice Date |
| Deadline for publishing the Summary Notice (Order, ¶ 8(d)) | 10 calendar days after Notice Date |
| Deadline for filing papers supporting final approval of Settlement, Plan of Allocation, and application for fees and expenses (Order, ¶ 27) | 35 calendar days prior to Settlement Fairness Hearing |
| Deadline for receipt of exclusions or objections (Order, ¶¶ 14, 17) | 21 calendar days prior to Settlement Fairness Hearing |
| Deadline for filing reply papers (Order, ¶ 27) | 7 calendar days prior to Settlement Fairness Hearing |
| Settlement Fairness Hearing (Order, ¶ 6) | No earlier than 100 calendar days after entry of the Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claims (Order, ¶ 11) | 120 calendar days after Notice Date |

## VIII.   CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order.

Dated:  July 1, 2019

**KESSLER TOPAZ MELTZER**
 **& CHECK, LLP**

*/s/ Andrew L. Zivitz*
Andrew L. Zivitz
Johnston de F. Whitman, Jr.
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Lead Counsel for Lead Plaintiff and the*
*Settlement Class*

**LABATON SUCHAROW LLP**
Johnathan Gardner
Alfred L. Fatale III
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:  (212) 818-0477

*Liaison Counsel for Lead Plaintiff and the*
*Settlement Class*

**GADOW TYLER, PLC**
Jason M. Kirschberg
511 E. Pearl Street
Jackson, MS  39201
Telephone:  (601) 355-0654
Facsimile:  (601) 510-9667

*Additional Counsel for Lead Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Andrew L. Zivitz*
Andrew L. Zivitz